O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.R.,<br><br>Petitioner,<br>v.<br><br>Kristi NOEM, Secretary, U.S. DEPARTMENT OF HOMELAND SECURITY; Pamela BONDI, U.S. Attorney General, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; Todd LYONS, Acting Director, IMMIGRATION AND CUSTOMS ENFORCEMENT; Ernesto Santacruz Jr., Acting Field Office Director of Enforcement and Removal Operations, Los Angeles Field Office, IMMIGRATION AND CUSTOMS ENFORCEMENT; Fereti SEMAIA, Warden of DESERT VIEW ANNEX; Joseph EDLOW, Director, U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Rose KENDRICK, Acting Director of National Benefits Center, U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Respondents. | Case No.: 5:25-cv-03565-MEMF-PVC<br><br>**ORDER GRANTING PETITIONER'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [DKT. NO. 7]** |

Before the Court is the *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction filed by Petitioner A.R. Dkt. No. 7 ("Motion"). Petitioner requests

1

that this Court enter a temporary restraining order. For the reasons stated below, the Motion is GRANTED.

### I. Background

#### A. Factual Background[1]

Petitioner A.R. is a nineteen-year-old college student originally from Bangladesh. Dkt. No. 1 ¶ 1 ("Petition"). He has lived in the United States since he was ten years old and has attended Los Angeles public schools. *Id.* ¶¶ 2, 20. Petitioner is now enrolled in community college in Los Angeles. *Id.* ¶ 23. Petitioner's father is a diplomatic official for the government of Bangladesh. *Id.* ¶ 20. According to Respondents, Petitioner was initially admitted to the United States in 2016 on a non-immigrant visa; he was subsequently issued another non-immigrant visa which expired August 18, 2022. *See* Velasquez Decl. ¶¶ 6-7, Dkt. No. 10-1. In 2022, Petitioner's father abandoned his family in the U.S. and threatened to harm them if they returned to Bangladesh. Petition ¶ 22.[2]

According to Respondents, Petitioner applied for Special Immigrant Juvenile Status ("SIJS") by filing an I-360 Petition. *See* Velasquez Decl. ¶ 8. SIJS or Special Immigrant Juvenile Classification is an immigration benefit available to certain noncitizen children who have been subject to state juvenile court proceedings related to parental abuse, neglect, abandonment, or similar maltreatment under state law. *See* U.S. Citizenship and Immigration Services, *Special Immigrant Juveniles, Policy Manual* Vol. 6, Pt. J, Ch. 1 (2025), https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-1 [https://perma.cc/6GGE-KNSD]. On June 8, 2023, the U.S. Citizenship and Immigration Services ("USCIS") approved the I-360, granting Petitioner SIJS. *See* Ex. B, Dkt. No. 7-1.[3] USCIS also granted him two other benefits: deferred action—making him a lower priority for

---

[1] Unless otherwise indicated, the following factual background is derived from the Petition for a Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

[2] Paragraph two of Petitioner's Motion states that Petitioner's father abandoned him and his family in 2019. *See* Dkt. No. 7 at 1.

[3] Petitioner claims that he was approved for SIJS and subsequently granted deferred action on June 8, 2024, *see* Ex. B, Dkt. No. 7-1, but Respondents claim he was approved for SIJS on June 8 but was not granted deferred action until October 10, 2023, *see* Velasquez Decl. ¶¶ 8-9.

removal—through October 11, 2027, and work authorization—permitting him to work legally in the United States  Petition ¶¶ 3, 24-25.

At some point, Petitioner's mother applied for asylum. An asylum applicant is permitted to list any dependents under the age of 21 as "derivatives" on their asylum application; if the asylum application is granted, the derivatives are also granted asylum status without having to file a separate claim. *See id.* ¶ 26, 26 n.1. On November 4, 2025, Petitioner's mother had an asylum interview, and Petitioner attended as a listed "derivative." *Id.* ¶ 26. During Petitioner's portion of the asylum interview, federal agents arrested Petitioner and handed his attorney a Notice of Termination of deferred action. *Id.*; *see also* Ex. 1, Dkt. No. 1-1. The Notice of Termination of deferred action indicated that his SIJS "remain[ed] approved." Ex. 1, Dkt. No. 1-1. That same day, Petitioner was also served with a Notice to Appear to initiate removal proceedings. Petition ¶ 27. The Notice to Appear alleged that Petitioner was subject to removal because he remained in the country after the expiration of his nonimmigrant visa in violation of Section 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B*). Id.* Petitioner was also served with a warrant for his arrest and arrested. *Id.*

On November 13, 2025, Petitioner filed a Motion for Bond Hearing and evidentiary support in support of his release on bond. *Id.* ¶¶ 29-31. The supporting documents included over one hundred pages of information about Petitioner's background and character, including seventeen letters of support from his friends, family, and teachers. *Id.* ¶ 31. He also filed a Motion to Terminate his removal proceedings, asserting that he was not removable due to his approved SIJS. *Id.* ¶ 30.

On November 17, 2025, the Immigration Judge held a bond hearing. *Id.* ¶ 32. Less than an hour before the hearing, Petitioner's counsel received new evidence from U.S. Immigration and Customs Enforcement ("ICE"): (1) a I-213 Form which detailed his immigration history, arrest and detention, and (2) an FBI Memorandum stating that the Petitioner was the subject of a national security investigation. *Id.* According to the Memorandum, the basis for the investigation was certain statements he purportedly made on the Discord messaging app, including statements from March 2024 regarding the Israel Palestine conflict. *Id.* ¶¶ 33-34. The basis for the removal proceedings remained the same, however: remaining in the country after the expiration of his visa in violation of Section 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B). *Id.* ¶ 33. At the bond hearing, the

1   Immigration Judge indicated that the parties could postpone the hearing in light of the new evidence,
2   but refused to exclude it. *Id.* ¶ 35. Unable to consult with Petitioner directly, Petitioner's counsel
3   chose to move forward with the hearing because of the impact Petitioner's detention was having on
4   him and his family. *Id.* At the hearing, Petitioner attempted to explain the context in which he made
5   the Discord statements but the Immigration Judge ultimately found that Petitioner was a danger to
6   the community and a flight risk and denied bond. *See id.* ¶¶ 36-38.

7   Four days later, on November 21, 2025, the Immigration Judge held a hearing on Petitioner's
8   Motion to Terminate. *Id.* ¶ 40. On December 5, 2025, both parties filed supplemental briefs on the
9   Motion to Terminate. *Id.* ¶ 41. Although the Respondents suggested they would allege additional
10  grounds for removal, they did not do so, nor did they submit any additional evidence regarding a
11  national security concern. *Id.* ¶¶ 40-41. In their supplemental brief, Respondents argued that
12  Petitioner's SIJS classification did not prevent him from being removed. *Id.* ¶ 41.

13  On December 9, 2025, the Immigration Judge issued an order granting the Motion to
14  Terminate. *Id.* ¶ 42. That order was appealed to the Board of Immigration Appeals ("BIA") on
15  January 7, 2026, and the appeal remains pending. Dkt. No. 10 at 1. Because Petitioner was not
16  released upon granting of the Motion to Terminate, he requested a new bond hearing and submitted
17  new evidence to further address the national security concern. Petition ¶ 43. Respondents did not
18  submit new evidence. *Id*. At the second bond hearing on December 17, 2025, the Immigration Judge
19  again denied bond, finding that Petitioner was a danger to the community due to his Discord
20  comments. *Id.* ¶¶ 44-45. Petitioner has appealed his bond determination to the BIA, and his appeal
21  remains pending. Dkt. No. 10 at 1.

**B. Procedural History**

On December 29, 2025, Petitioner filed a Petition for a Writ of Habeas Corpus under 28
U.S.C. § 2241 in this matter. *See* Petition. On January 5, 2026, Petitioner filed an Ex Parte
Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction.
Dkt. No. 7 ("Motion"). On January 7, 2026, Respondents filed an opposition brief. *See* Dkt. No. 10
("Opposition"). On January 9, 2026, Petitioner filed a reply brief. *See* Dkt. No. 11 ("Reply"). On

January 14 and 20, 2026, Petitioner filed Notices of Supplemental Authority highlighting recent TROs issued in the U.S. District of Colorado and the Eastern District of Virginia for petitioners with SIJS. *See* Dkt. Nos. 13-14. The Court held a hearing on the Motion on January 26, 2026. At the hearing, both parties submitted on the tentative provided in advance. Respondents agreed that release within 48 hours would be practicable.

## II. Applicable Law

### A. Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

/ / /

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. sections 1221 to 1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).[4]

### III. Discussion

#### A. This Court has jurisdiction under 8 U.S.C. § 1226(e) and 8 U.S.C. § 1252(a)(2)(B)(ii).

Respondents argue that "the Court lacks jurisdiction to review his custody determination and bond orders under both Section 1226(e) and Section 1252(a)(2)(B)(ii)." Opposition at 5-6. Petitioner counters that the Court has jurisdiction because "he is not asking this Court to reconsider the Immigration Judge's bond determination." *See* Motion at 7-8; Reply at 1-3. For the reasons below, the Court finds that it has jurisdiction.

As a general matter, in arguing this Court lacks jurisdiction, Respondents appear to inaccurately describe the question posed to this Court. They note, and then justify, that "because Section 1226(e) commits bond determinations to agency discretion by statute, the Court also lacks jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii)." *See* Opposition at 5. But this case does not challenge the Immigration Judge's discretionary analysis of dangerousness and flight risk—the Petitioner merely alleges whether Respondents have the legal basis to detain him under the Due

---

[4] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' Alien, Webster's Third New International Dictionary 53 (2002), while the word noncitizen, which is synonymous, *see Alien and Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

Process Clause and the Administrative Procedure Act ("APA") because of Respondents' alleged unlawful termination of Petitioner's deferred action. *See* Motion at 7-8; Reply at 1-3; *see also Ibarra-Perez v. United States*, 154 F.4th 989, 998 (9th Cir. 2025) (holding that there was "jurisdiction because [petitioner's] suit was premised on a lack of legal authority to [detain] him"). That inquiry is entirely independent of whether the government has the discretionary judgment to detain Petitioner.

With this framework in mind, the statutes that Respondents argue prevent this Court from exercising jurisdiction are inapposite.

Section 1226(e) states that: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). But the Supreme Court has held that "Section 1226(e) contains no explicit provision barring habeas review." *Demore v. Kim*, 538 U.S. 510, 517 (2003). It does not preclude "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). The Ninth Circuit has reiterated that there is "jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [Petitioner's] agency proceedings, including any claimed due process violation." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022).

Here, Petitioner advances four grounds upon which a temporary restraining order should be granted: First, Petitioner argues that his detention violated his Fifth Amendment right to substantive due process. *See* Motion at 8-10. Second, he argues that his detention violated his Fifth Amendment right to procedural due process because his deferred action was terminated without proper process under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See id.* at 10-15. Third, he argues that his termination of his deferred action was arbitrary and capricious, and lacked consideration of his individualized facts and circumstances, in violation of the APA. *See id.* at 15. Finally, he argues that termination of his deferred action constituted an unlawful arrest in violation of the Fourth Amendment and 8 C.F.R. § 287.8(c)(2). *See id.* at 15-16.

The Court finds at the very least that his second claim—that his detention violated his Fifth Amendment right to procedural due process—is not a matter "of 'discretionary judgment,' 'action,' or 'decision,'" so Petitioner's challenge "falls outside of the scope of Section 1226(e)." *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018); *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Accordingly, the Court finds there is jurisdiction to hear the habeas petition and consider the granting of injunctive relief as a preliminary matter, if appropriate, at least with respect to that claim.[5] The Court need not reach the question of its jurisdiction over the other claims at this time, and those would appear to benefit from additional briefing.

### B. Applying the *Winter* factors, Petitioner is entitled to a temporary restraining order.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Having determined below that he is entitled to a temporary restraining order with respect to the procedural due process claim, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

As stated above, Petitioner argues that his detention violated his Fifth Amendment right to procedural due process because his deferred action was terminated without proper process under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Motion at 10-15. The Court applies the *Winter* factors to Petitioner's claim below.

Having found that the procedural due process argument advanced by Petitioner establishes a sufficient likelihood of success to justify issuance of a TRO, the Court need not reach the other claims at this time.

> i. There are "serious questions" going to the likelihood of success on the merits to warrant injunctive relief.

---

[5] Because Section 1226(e) does not bar the review of Petitioner's due process challenge, neither does the discretionary review provision in Section 1252(a)(2)(B)(ii). *See* Opposition at 5; Reply at 1. Petitioner also takes issue with whether he was given a lawful basis for removal. As discussed below, the Court need not reach that argument at this time.

> 1. *Petitioner was not given pre-deprivation notice and a right to be heard before the termination of his deferred action and his post-deprivation process raises "serious questions."*

Petitioner contends that his deferred action, which gave him relief from removal, was "terminated in violation of his procedural due process rights," because he was not given notice of its termination and an opportunity to contest the government's termination. *See* Motion at 12-15; Reply at 6-8. Respondents contend that there was no procedural due process violation because Petitioner's deferred action was legally revoked under administrative discretion, so Respondents could engage in subsequent removal proceedings. *See* Opposition at 7-8. For the reasons discussed below, the Court finds that Petitioner had proper relief from removal under deferred action, and there are "serious questions" going to the merits of his procedural due process rights when Respondents revoked his deferred action without notice and an opportunity to be heard.

First, Petitioner was relieved from being removed due to his deferred action status. "Approval of deferred action status means that, for . . . humanitarian reasons . . . , no action will thereafter be taken to proceed against an apparently deportable [noncitizen], even on grounds normally regarded as aggravated." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (quoting 6 C. Gordon, S. Mailman, & S. Yale–Loehr, Immigration Law and Procedure § 72.03 [2][h] (1998)). The Ninth Circuit agrees. *See Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n.3 (9th Cir. 2001); *Lee v. Holder*, 599 F.3d 973, 974 (9th Cir. 2010) (noting that deferred action is interim relief "to prevent [] removal from the United States"). Accordingly, this Court finds that Petitioner could not have had his deferred action status revoked without due process.

"'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* at 673 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Ninth Circuit has not defined the contours of what procedural safeguards are due to noncitizens facing termination of deferred action status. The first question then to determine if "a violation of procedural due process is alleged is whether the [Petitioner has] a protected property or

liberty interest and, if so, the extent or scope of that interest." *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1190-91 (9th Cir. 2015). Next, to determine which procedural protections are due, the Court applies the *Mathews v. Eldrige* test and examines: (i) the private interest that will be affected, (ii) the risk of an erroneous deprivation and the value of additional procedures sought, and (iii) the government's interest, including the burdens associated with the additional procedures sought. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). This Court finds that Petitioner has a protected liberty interest, and that these factors weigh in favor of finding that Petitioner is entitled to pre-deprivation procedural safeguards—namely notice and an opportunity to be heard on the termination of his deferred action status.

First, Petitioner has a protected liberty interest in his freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner's liberty interest is "being free from physical detention by one's own government," "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Thus, this Court finds that Petitioner has a strong protected liberty interest in being free from detention. *See* Motion at 12-13.

Next, the Court applies the *Mathews* factors. As described above, with respect to the first factor, it is undisputed that Petitioner has a liberty interest in being free from detention.

With respect to the second factor, Petitioner has demonstrated that there are "serious questions" as to whether there is a risk of an erroneous deprivation of his liberty interest without his requested process. Here, Petitioner's Notice of Termination of his deferred action simply states that USCIS has "exercised discretion to terminate [his] period of deferred action," and Petitioner cannot appeal or reconsider this decision. *See* Ex. 1, Dkt. No. 1-1. This letter does not provide sufficient notice of the reasons for his deferred action termination. This is separate from the grant of his SIJS, which in that same letter, USCIS said was still approved. *Id.* Respondents contend that Petitioner had sufficient due process with the Immigration Judge, *see* Opposition at 6, but due process requires Petitioner to be heard "'at a meaningful time and in a *meaningful manner*.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) (emphasis added). Petitioner's post-

deprivation process raises "serious questions" regarding his ability to meaningfully address the termination of his deferred action.

 First, when Petitioner filed a Motion to Terminate his removal proceedings on November 13, 2025, his counsel argued that "the sole ground of deportability on his Notice to Appear [was] waived for SIJS beneficiaries." Rabin Decl. ¶ 10, Dkt. No. 7-1. The Notice to Appear did not mention any national security risk or termination of his deferred action to justify the removal, even though when Petitioner's counsel was handed the Notion of Termination, she was told that Petitioner was the subject of a national security investigation. *See id.* ¶ 7; Ex. 2, Dkt. No. 1-1. And Petitioner was initially granted deferred action because he was deemed a "lower priority for removal." *See* Ex. 2, Dkt. No. 1-1; Ex. B, Dkt. No. 7-1. So at that time, Petitioner's counsel was not provided sufficient notice to permit him to be meaningfully be heard on the termination of deferred action. *See* Motion at 14.

 Then, on November 17, 2025, the Immigration Judge held a bond hearing to determine whether the Petitioner should be released on bond. Petition ¶ 11. In support of his request to be released on bond, Petitioner filed over one hundred pages of information about Petitioner's background and character, including seventeen letters of support from his friends, family, and teachers. Petition ¶ 31; Rabin Decl. ¶ 11. But less than an hour before the hearing, Petitioner's counsel received new evidence from ICE, including an FBI Memorandum stating that the Petitioner was the subject of a national security investigation because of certain statements he purportedly made on the Discord messaging app, *See* Petition ¶¶ 33-34; Ex. C, Dkt. No. 7-1. The basis for the removal proceedings remained the same, however: remaining in the country after the expiration of his visa in violation of Section 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B). Petition ¶ 33. After hearing from Petitioner at the hearing, the Immigration Judge found that Petitioner was a danger to the community and a flight risk and denied bond,. *See id.* ¶ 35-38; Ex. G, Dkt. No. 7-1. In denying bond, the Immigration Judge did not discuss or even mention the termination of his deferred action. *See* Ex. G. It is not clear whether Petitioner was even given an opportunity to be heard on the termination of his deferred action at that time.

More importantly, given that (1) the Notice to Appear and the I-213 Form did not give reasons for the deferred action termination and (2) the basis for Petitioner's removal did not change after receiving the FBI Memo, Petitioner had no reason to believe that the national security investigation motivated the termination of his deferred action. Thus, at the time of his bond hearing, it appears that his counsel was still not provided with sufficient notice of the reasons for the termination to permit him to do "adequate preparation for [his] impending [bond] 'hearing'" with respect to the termination. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978). The bond hearing therefore did not satisfy due process with respect to the termination. *Id.*

Four days later, on November 21, 2025, the Immigration Judge held a hearing on Petitioner's Motion to Terminate. Petition ¶ 40. On December 5, 2025, both parties filed supplemental briefs on the Motion to Terminate, and in response to the arguments raised in Petitioner's Motion to Terminate, Respondents argued that "his SIJS classification did not protect him from being placed in removal proceedings for overstaying his visa." Rabin Decl. ¶ 17. Again, there was no mention about the termination of Petitioner's deferred action as the reason for Petitioner's deportability, nor was there any additional evidence submitted regarding any national security concern to justify the removal and/or termination of Petitioner's deferred action. *See* Petition ¶¶ 40-41. Just as with the initial bond hearing, it appears that Petitioner was not permitted to be heard on the termination of his deferred action and certainly had not been provided with adequate notice to permit him to be meaningfully heard on the termination at that time.

And although Petitioner had a second bond hearing on December 17, where he submitted additional evidence addressing his alleged national security risk, *see* Petition ¶ 43, this also did not create a meaningful opportunity for Petitioner to be heard on his deferred action termination; Petitioner was not given a reason for the termination before or at the second bond hearing. Just as with the initial bond hearing and the hearing on the Motion to Termination, it appears that Petitioner was not permitted to be heard on the termination of his deferred action and certainly had not been provided with adequate notice to permit him to be meaningfully heard on the termination at that time.

Given that none of the three hearings gave Petitioner a meaningful opportunity to be heard on the termination of his deferred action, and Respondents have pointed to no other hearings, even if the Court considered these hearings to be post-deprivation remedies, they did not satisfy due process. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990).

Moreover, because Petitioner's detention would be "potentially indefinite" due to the alleged national security concerns, Respondents' alleged "dangerousness rationale . . . [had to be] . . . accompanied by some other special circumstance, such as mental illness, that helps to create the danger," and a noncitizen's removable status "bears no relation to dangerousness." *Zadvydas*, 533 U.S. at 679. Respondents have not identified "some other special circumstance." Thus, the lack of any pre-deprivation process and the inadequate post-deprivation process makes the risk of an erroneous deprivation very high.

Petitioner is seeking an opportunity to be heard by receiving proper notice of the termination and a hearing *prior* to the termination of his deferred action. *See* Motion at 14-15. The value of this pre-deprivation notice and hearing is strong, because as shown above, no post-deprivation remedy gave him adequate process. And even if it is discretionary to terminate deferred action, because Petitioner has a protected liberty interest in his freedom conferred to him by his deferred action, Respondents are required to provide a reason for the termination. This is a basic requirement of due process as "the Due Process Clause require procedural protections before the [Government] may deprive the party of his [Government]-conferred interest." *Johnson v. Ryan*, 55 F.4th 1167, 1194 (9th Cir. 2022); *Reno*, 525 U.S. at 484; *see also Young v. Harper*, 520 U.S. 143, 150-52 (1997) (rejecting that a pre-parolee does not enjoy the same liberty interest as a parolee because the executive could exercise discretion to deny parole). Accordingly, this Court finds that the second *Mathews* factor weighs strongly in favor of Petitioner.

Finally, as to the third factor, the Court finds that Respondents have identified no sufficiently countervailing interest or burden in providing the procedures Petitioner seeks—which is simply a hearing on the termination of deferred action. *See* Motion at 15. Therefore, the third factor weighs in Petitioner's favor.

In sum, Petitioner is likely to show "'serious questions going to the merits'" that his post-deprivation hearings did not give him due process in the termination of his deferred action; he is therefore entitled to a pre-deprivation hearing under *Mathews v. Eldridge. See All. for the Wild Rockies*, 632 F.3d at 1135 (9th Cir. 2011).

And given that it appears that the termination of the deferred action precipitated Petitioner's detention, and Petitioner was not given an opportunity to be meaningfully heard on the termination, Petitioner is also likely to show "'serious questions going to the merits'" as to whether his detention is in violation of his procedural due process rights, therefore entitling him to release until the hearing described above occurs. *See All. for the Wild Rockies*, 632 F.3d at 1135 (9th Cir. 2011).

> ii. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Petitioner must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that he has done so.

As a threshold matter, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez*, 872 F.3d at 994. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Respondents do not contest this factor, so it is conceded. *See generally* Opposition. Thus, as this Court has already found that Petitioner has a sufficient likelihood of success on the merits of his challenges to his current detention—in part based upon Petitioner's constitutional rights—this Court finds the second *Winter* factor is met.

At the hearing, Petitioner requested that the Court consider restoring Petitioner's deferred action at this time. The Court declines to do so for two reasons: (1) this relief was not requested in the Motion and therefore the Respondents have not had the opportunity to be heard on it; and (2) the Court is required is to narrowly tailor the injunctive relief provided. *See Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015). ("[I]njunctive relief must be tailored to the specific harm alleged.").

Given the relief that the Court is granting, Petitioner has not yet shown that irreparable harm will result if the deferred action is not restored at this time.

        iii. <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Petitioner's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities weighs in Petitioner's favor. Respondents do not contest this factor, so it is conceded. *See generally* Opposition. Moreover, the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). And "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). Also, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

In sum, the third and fourth *Winter* factors are met here. *See* Motion at 17-18.

**C. No Bond Shall Be Required**

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The parties agree no bond is necessary in this instance.

## IV. Conclusion

For the foregoing reasons, the Motion is GRANTED. Petitioner's request for a temporary restraining order is GRANTED.

1. Respondents are ORDERED to release Petitioner from custody (and return to him his personal effects) within 48 hours, and not re-detain him without compliance with notice and an opportunity to be heard on the termination of Petitioner's deferred action;
2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;
3. Respondents shall show cause, in writing, as to why a preliminary injunction should not issue in this case no later than fourteen (14) days of the date of this Order. Petitioner may file a response no later than seven (7) days after Respondents' filing.
4. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by January 30, 2026. The joint status report shall also address whether the habeas petition is moot.

IT IS SO ORDERED.

Dated: January 26, 2026

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge